UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Tony Miller,

                Plaintiff,        Case No. 21-12879

v.                                     Judith E. Levy
                                     United States District Judge

Walsha Horn, *et al.*,

                                     Mag. Judge David R. Grand

                Defendants.

_____/

**OPINION AND ORDER OF SUMMARY DISMISSAL**

Before the Court is Plaintiff Tony Miller's *pro se* civil rights complaint filed under 42 U.S.C. § 1983. (ECF No. 1.) Plaintiff, a state prisoner currently incarcerated at the St. Louis Correctional Facility in St. Louis, Missouri,[1] is proceeding without prepayment of the filing fee pursuant to 28 U.S.C. § 1915(a)(1). (ECF No. 4.) Plaintiff is suing five Michigan Department of Corrections ("MDOC") staff members for racially discriminatory remarks and for a prison transfer in retaliation

---

[1] At the time the complaint was filed, Plaintiff was incarcerated at the Chippewa Correctional Facility ("URF") in Kincheloe, Michigan. (*See* ECF No. 1, PageID.1.)

for filing grievances. He seeks the suspension of all defendants and monetary damages. Additionally, Plaintiff filed a separate motion seeking Court-appointed counsel. (ECF No. 6.)

Because none of Plaintiff's allegations state a claim upon which relief may be granted, the complaint will be dismissed in its entirety. Plaintiff's motion for appointment of counsel is also denied as moot.

I. Background

The events about which Plaintiff complains occurred while he was confined at the Gus Harrison Correctional Facility ("ARF") in Adrian, Michigan. (*See* ECF No. 1, PageID.6, 8.) Plaintiff first alleges Defendant Corrections Officer Walsha Horn[2] made racially discriminatory and retaliatory comments on November 1, 2021. (ECF No. 1, PageID.3, 6.) When Plaintiff requested some brown paper towels from the officer desk, Defendant Walsha Horn asked, "why can't they be white paper towels[?]" (*Id*.) After Plaintiff responded that Defendant Walsha Horn's comment was racist, Defendant Walsha Horn stated: "is that chicken you eating in

---

[2] Defendant Corrections Officer Walsha Horn is alternatively referred to as "Walsha-Horn" in the complaint. (*See* ECF No. 1, PageID.6.) For clarity, the Court will use "Walsha Horn" as indicated on the docket. Similarly, the Court will also use the names of Defendants as listed on the docket in lieu of alternative spellings included in the complaint.

2

front of the officer desk[?]" (*Id.*) Defendant Walsha Horn also mentioned a lawsuit Plaintiff had previously brought, then told Plaintiff to "dress warm," telling him he was headed to Kinross Correctional Facility or Chippewa Correctional Facility ("URF"), both of which are in the Upper Peninsula of Michigan. (*Id.* at PageID.6.) Plaintiff filed a grievance against Defendant Walsha Horn for her remarks on November 2, 2021. (*Id.* at PageID.3, 6.)

Plaintiff next asserts Defendants PC Dennis Kendell and Resident Unit Manager ("RUM") Thomas transferred Plaintiff from ARF in retaliation for writing the grievance on Defendant Walsha Horn. (*Id.* at PageID.3, 8.) At some point after the incident with Defendant Walsha Horn, Plaintiff was called to the RUM's office, where Defendant Thomas told Plaintiff he was "riding . . . out" because his family called with "issue after issue[.]" (*Id.* at PageID.8.) Defendant Kendell, also present, said that Plaintiff had written "a fucking grievance on [Defendant] officer Walsha Horn for doing her fucking job . . ." (*Id.*) He then told Plaintiff to "pack your shit and dress warm[,]" and that he was leaving ARF. (*Id.*) Plaintiff is now confined at URF. (*Id.* at PageID.1.) Plaintiff filed a

3

grievance against Defendants Kendell and Thomas on November 2, 2021. (*Id.* at PageID.8.)

Plaintiff alleges Defendant Supervisor Lee McRoberts participated in the retaliation by authorizing his transfer. (*Id.* at PageID.3.) Defendant McRoberts signed a security classification screening form regarding Plaintiff on November 3, 2021, the day after Plaintiff' filed grievances against Defendants Walsha Horn, Thomas, and Kendell. (*Id.* at PageID.10.) The screening form calculated Plaintiff's "New Management Level" at Level I, the lowest security classification, but Defendant McRoberts entered Level II as appropriate for Plaintiff's "true security needs[.]" (*Id.*) This did not change Plaintiff's status, because his original "Confinement Level" was also a Level II. (*Id.*)

Finally, Plaintiff asserts Defendant Grievance Coordinator Ream is a co-conspirator in the retaliation, and that he denied Plaintiff access to the grievance process and the courts. (*Id.* at PageID.3.) Plaintiff wrote Defendant Ream three times after his transfer to URF, asking for the identification numbers for his grievances against Defendants Walsha Horn, Thomas, and Kendell. (*Id.* at PageID.12–14.) Receiving no answer, he wrote to the grievance coordinator at URF and the warden at ARF

4

reporting these circumstances and requesting their assistance in obtaining the numbers. (*Id.* at PageID.16, 20.)

Plaintiff seeks $100,000.00 in damages from each Defendant as well as their suspensions. (*Id.* at PageID.3–4.)

## II. Legal Standard

Under the Prison Litigation Reform Act ("PLRA"), the Court is required to dismiss *sua sponte* an *in forma pauperis* complaint before service if it determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from defendants immune from such relief. 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The dismissal standard under the PLRA is equivalent to that of Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citations omitted). When evaluating a complaint under that standard, courts "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

5

Federal Rule of Civil Procedure 8(a) requires a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief" as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2)–(3). The purpose of this rule is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal citation omitted). Rule 8's pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 662 (quoting *Twombly*, 550 U.S. at 555). Moreover, a complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). And "naked assertion[s] devoid of further factual enhancement," will not survive screening. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 401 (6th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

"A complaint can be frivolous either factually or legally." *Anson v. Corr. Corp. of Am.*, 529 F. App'x 558, 559 (6th Cir. 2013) (citing *Lappin*, 630 F.3d at 470). The former is found "when [the complaint] relies on 'fantastic or delusional' allegations"; the latter, "when 'indisputably

meritless' legal theories underlie the complaint." *Brand v. Motley*, 526 F.3d 921, 923 (6th Cir. 2008) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989)).

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege a violation of a right secured by the federal Constitution or laws and must show that the violation was committed by a person acting under color of state law." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The plaintiff must allege that "the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983)). *Pro se* civil rights complaints are construed liberally. *See Stanley v. Vining*, 602 F.3d 767, 771 (6th Cir. 2010).

### III. Analysis

#### A. Retaliation

Plaintiff's first claim is that all Defendants acted with a retaliatory motive. To find retaliation in violation of the First Amendment requires a prisoner establish that: (1) he engaged in protected conduct; (2) he

suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) the adverse action was motivated at least in part by the protected conduct. *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)) (en banc).

Plaintiff meets the first criterion. An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). In addition, "[i]nmates have a constitutional right of access to the courts to challenge prison conditions." *King v. Zamiara*, 150 F. App'x 485, 492 (6th Cir. 2005) (citing *Thaddeus–X*, 175 F.3d at 391). Accordingly, Plaintiff's separately-filed litigation and his grievance against Defendant Walsha Horn constitute protected conduct under the First Amendment.

Plaintiff also meets the third prong, causation. Though rare, a defendant's own words may demonstrate the protected conduct was a "motivating factor" for the retaliation. *Hill*, 630 F.3d at 476; *see also Patterson v. Godward*, 370 F. App'x 608, 610 (6th Cir. 2010) (causation may be established by defendants' statements). Defendants Walsha Horn, Thomas, and Kendell all mentioned Plaintiff's litigation or

8

grievances at the same time they threatened to have Plaintiff transferred.

In addition, at this stage, "temporal proximity" suffices "to render Plaintiffs' claims plausible." *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 632 (6th Cir. 2013). Plaintiff filed his grievances on November 2, 2021. (ECF No. 1, PageID.6, 8.) Defendant McRoberts completed the security classification screening form regarding Plaintiff on November 3, 2021. (*Id.* at PageID.10.) On November 4, 2021, Plaintiff wrote a letter to Defendant Ream stating that he was "riding out from this facility due to retaliation[.]" (*Id.* at PageID.12.) By November 8, 2021, Plaintiff was writing his letters from the URF. (*Id.* at PageID.13.)

However, Plaintiff's claims fail on the second prong of the retaliation test because his transfer to URF is not sufficiently adverse, under Sixth Circuit precedent, to deter an individual from engaging in protected conduct. That is, "transfers to the general population of another prison are not typically an adverse action[.]" *Hill*, 630 F.3d at 474 (citing *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003)). Only when a prison "transfer would result in foreseeable, negative consequences to the particular prisoner" does the transfer or threat of one rise to an adverse

9

action. *Id*. (citing *Siggers–El v. Barlow*, 412 F.3d 693, 701–02 (6th Cir. 2005)).

For instance, a transfer into administrative segregation or a "lockdown unit" would be such a negative consequence, "because actions that result in more restrictions and fewer privileges for prisoners are considered adverse." *Id*. (citing *King*, 150 F. App'x at 494). A retaliatory transfer which deprived a prisoner of the benefits of a settlement agreement with the MDOC, and returned him to a prison where he had previously "suffered retaliatory actions by prison officials," also alleged an adverse action sufficient to survive screening under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013)

Here, Plaintiff has not alleged any negative consequences from his transfer to URF, nor has he alleged he was transferred to a unit other than the general population of that facility. As a result, the transfer does not rise to an adverse action "because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights." *See Smith*, 78 F. App'x at 543 (collecting cases).

Accordingly, Plaintiff's retaliation claims against Defendants Walsha Horn, Tomas, and Kendell (who threatened the transfer) and

10

Defendant McRoberts (who allegedly authorized it) fail to meet the second prong of the *Thaddeus-X* test. Plaintiff has not demonstrated unconstitutional retaliation.

### B. Denial of access to the grievance process and the courts

Plaintiff's claims against Defendant Grievance Coordinator Ream also fail. Plaintiff alleges Defendant Ream was a "co-conspirator" in the retaliation by not processing his grievances, thereby preventing Plaintiff from exhausting his administrative remedies. (ECF No. 1, PageID.3.) Plaintiff supports this claim with letters that indicate Defendant Ream did not provide him the information he needed to appeal the grievances he filed against Defendants Walsha Horn, Thomas, and Kendell. (*Id.* at PageID.12-20.) A plaintiff's claims must be taken as true, but the Court is not obligated to accept conclusory allegations, *Iqbal*, 556 at 662, or "naked assertion[s] devoid of further factual enhancement[.]" *Bickerstaff*, 830 F.3d at 401. Plaintiff's allegation that Defendant Ream conspired in the retaliation is such a conclusory or unsupported claim.

More importantly, Plaintiff has not established he was injured by Defendant Ream's actions or inaction. "[T]o state a claim for interference with access to the courts, . . . a plaintiff must show actual injury."

11

*Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Thaddeus–X*, 175 F.3d at 394). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Id.* (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)). Plaintiff does not allege that his pending litigation, mentioned by Defendant Walsha Horn, was negatively affected. In addition, he was able to file this retaliation lawsuit.

Nor can Plaintiff demonstrate any injury associated with a denial of access to the grievance process. The letters Plaintiff included with his complaint demonstrate his diligence in trying to obtain the grievance identification numbers to complete the grievance appeal process and the lack of institutional response. Were this case to survive screening, Plaintiff has likely shown the grievance process was not available to him, with the result that he would not "have to pursue that remedy to exhaust his claim." *Owens v. Keeling*, 461 F.3d 763, 769 (6th Cir. 2006) (citation omitted). However, Plaintiff has not experienced constitutional injury by the denial of access to the courts or the grievance process.

**C. Racially discriminatory remarks**

Finally, Defendant Walsha Horn's racially discriminatory comments do not rise to actionable conduct. "Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief." *Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (citing *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987)). Verbal threats and abuse made in retaliation for filing grievances are also not actionable. *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002). Plaintiff's allegation of discriminatory verbal harassment thus fails to state a claim upon which relief may be granted under section 1983.

### IV. Conclusion

For the reasons set forth above, Plaintiff has failed to state a claim against Defendants upon which relief may be granted. Accordingly, the complaint is **DISMISSED WITH PREJUDICE** under 28 U.S.C. §§ 1915(e)(2)(b) and 1915A. (ECF No. 1.) Additionally, Plaintiff's motion for appointment of counsel is **DENIED AS MOOT**. (ECF No. 6.)

In addition, the Court concludes an appeal from this order would be frivolous and therefore cannot be taken in good faith. *See* 28 U.S.C. §

13

1915(a)(3); *Diaz v. Van Norman*, 351 F. Supp. 2d 679, 682 (E.D. Mich. 2005) (citing *Coppedge v. United States*, 369 U.S. 438, 445 (1962)).

**IT IS SO ORDERED.**

Date: August 3, 2022  
    Ann Arbor, Michigan

s/Judith E. Levy  
JUDITH E. LEVY  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or first-class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 3, 2022.

s/William Barkholz  
WILLIAM BARKHOLZ  
Case Manager